IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANCISCO H. QUINTANA, | ) | |
| | ) | No. 15 C 6417 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Plaintiff, Francisco Quintana, appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying him Disability Insurance Benefits under Title II of the Social Security Act ("the Act"), and denying him Supplemental Security Income under Title XVI of the Act. Defendant's motion for summary judgment to affirm the Commissioner's decision [16] is denied; the Court grants Plaintiff's motion [11] for the reasons outlined below, and remands for further proceedings consistent with this opinion.[1]

STATEMENT OF FACTS

I.     PROCEDURAL HISTORY

On August 13, 2012, Plaintiff filed an application for Disability Insurance Benefits under Title II of the Act, alleging a disability onset date of November 6, 2010, due to impairments arising from bilateral rotator cuff injury; diabetes mellitus, including both diabetic retinopathy and diabetic neuropathy of the upper and lower extremities; hypertension; and bilateral wrist tendonitis. R. at 236–37, 252, 256. Additionally, on August 14, 2012, Plaintiff filed an

---

[1] The Court construes Plaintiff's Brief in Support of His Motion To Reverse the Decision of the Commissioner of Social Security [11] as a motion for summary judgment.

application for Supplemental Security Income under Title XVI of the Act, alleging the same. R. at 238–43, 256. Plaintiff's claims were denied initially on October 30, 2012; denied upon reconsideration on March 1, 2013; and denied upon hearing in front of an Administrative Law Judge ("ALJ") on April 23, 2014. R. at 22, 126–47, 148–69. Plaintiff then appealed the ALJ's unfavorable decision, but the Appeals Council denied review on June 5, 2015, thereby rendering the ALJ's decision the Commissioner's final decision. R. at 1, 8–9; *see Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009). Plaintiff subsequently filed a complaint in this Court on July 23, 2015, appealing the Commissioner's denial of benefits. Pl.'s Br. 1. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II. OVERVIEW

Plaintiff's medical record details that Plaintiff has had a history of shoulder pain, shoulder surgery, and diabetes monitoring. R. at 88, 322–402. At the ALJ's hearing, Plaintiff testified that he experiences shoulder weakness from the tear in his rotator cuff, leg numbness from his diabetic neuropathy, and blurred vision from fluctuations in his blood glucose levels. R. at 17, 42, 44; Pl.'s Br. 3–4. Plaintiff also alleged he is unable to work more than two hours due to weakness in his arms and legs, his frequent fatigue, his difficulty holding objects, and his inability to walk more than a block at a time. R. at 17, 42, 43; Pl.'s Br. 3. Additionally, at the time of the ALJ's hearing, Plaintiff was fifty-three years old; five-feet, six-inches tall; and weighed 192 pounds. R. at 41; Pl.'s Br. 1. Based on Plaintiff's height and weight, he had a resulting body mass index (BMI) of 31.0. Pl.'s Br. 1. With a BMI of 31.0, Plaintiff suffered from Level I obesity. SSR 02-1p, 2002 WL 34686281, at *2.

## III. THE ALJ'S DECISION

The ALJ held that Plaintiff was not disabled under the Act during the period from November 6, 2010, the alleged disability onset date, through April 23, 2014, the date of the ALJ's decision. R. at 14. The ALJ found that Plaintiff had two severe impairments: disease of the bilateral rotator cuffs and diabetes mellitus. R. at 14. These impairments were labeled "severe" because they "cause more than minimal limitations in the claimant's ability to perform basic work activities." R. at 16. The ALJ also found that Plaintiff had several non-severe impairments, including hypertension and carpal tunnel syndrome. R. at 16. These impairments were designated "non-severe" because they individually did not cause any more than a minimal limitation on Plaintiff's ability to perform basic work activities. R. at 16. The ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 16.

After consideration of the entire record, the ALJ determined that Plaintiff's residual functional capacity ("RFC") allowed him to perform less than light work, but that his impairments limited his ability to complete certain tasks. R. at 16. For example, Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently; Plaintiff can sit for six hours and stand or walk for six hours for a total of eight hours in a workday, with normal breaks; Plaintiff can push or pull or use foot controls frequently, but not continuously; Plaintiff can climb stairs and ramps, but not ladders, ropes, and scaffolds; Plaintiff can balance occasionally; Plaintiff can stoop, kneel, and crouch frequently; and Plaintiff can crawl occasionally. R. at 16. However, Plaintiff can only reach overhead with ten pounds occasionally; Plaintiff must avoid unprotected heights, dangerous moving machinery, wet slippery surfaces, concentrated exposure to extreme cold, and even moderate exposure to vibration. R. at 16. Based on the medical

evidence, Plaintiff's testimony, the vocational expert's testimony, and the ALJ's own assessment of Plaintiff's RFC, the ALJ concluded that Plaintiff was incapable of performing any past relevant work, but was able to perform the requirements of occupations such as office helper, information clerk, and mailroom clerk. R. at 20–21. Accordingly, the ALJ found Plaintiff was "not disabled" under the Act. R. at 21.

In his opinion, the ALJ considered several medical opinions to determine Plaintiff's disability status, including the medical opinions of Dr. James McKenna and Dr. Dean Velis. R. at 18–19. Dr. McKenna is a medical expert who did not personally exam Plaintiff, but testified at the ALJ's hearing after reviewing Plaintiff's medical records. R. at 18–19. Dr. McKenna opined that according to the available medical records, Plaintiff did not suffer from an impairment or combination of impairments that met or medically equaled a listing according to 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 54. However, Dr. McKenna testified that it was reasonable for Plaintiff to undergo another consultative examination, because the only consultative examination of record occurred fourteen months prior to Dr. McKenna's testimony. R. at 59–60. The ALJ afforded Dr. McKenna's opinion great weight because, even though Dr. McKenna did not personally examine Plaintiff, his opinion "is consistent with the record" as it limits Plaintiff to a light exertional level of work, which the ALJ found to be consistent with Plaintiff's diabetes mellitus, shoulder surgeries, and consultative examinations. R. at 18.

Dr. Velis is a consultative examining physician who personally examined Plaintiff per the ALJ's request. R. at 19, 61, 490. Dr. Velis opined, among other things, that Plaintiff had diminished shoulder abduction with range of motion pain and tenderness, that was "marked" in the left shoulder. R. at 493. Dr. Velis also completed an evaluation of Plaintiff's functional capacity, noting Plaintiff had several severe limitations. R. at 19, 495–500. Dr. Velis's opinion is

the only medical opinion of record that supports Plaintiff's disabling allegations. R. at 18. The ALJ afforded little weight to Dr. Velis's opinion, finding that "his opinion is not consistent with the record, or even his own examination" because overall, it "seems to be based more on the claimant's allegations than his presentation during the examination." R. at 19.

## DISCUSSION

### I. STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, if it is supported by substantial evidence, and if it is free of legal error. 20 C.F.R. §§ 404.1520(a), 416.920(a); 42 U.S.C. § 405(g). This Court must reverse if there is an error of law, even if the evidence adequately supports the conclusion. *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless build a "logical bridge" between the evidence and his conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). A "minimal[] articulat[ion]" of the ALJ's justification is enough. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

### II. ANALYSIS

Plaintiff has raised several arguments supporting reversal and remand of the ALJ's decision. The Court address two of these arguments in turn: The ALJ's failure to consider Plaintiff's obesity, and the ALJ's failure to properly weigh medical opinion evidence. Because this case requires remand to correct these errors, the Court does not address Plaintiff's additional argument alleging that the ALJ improperly discounted Plaintiff's credibility while evaluating the intensity and persistence of Plaintiff's subjective symptoms. The Court does note however, that the Social Security Administration has recently updated its guidance about evaluating symptoms

5

in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new ruling eliminates the term "credibility" from the Social Security Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1. Thus, on remand, the ALJ should take the opportunity to reevaluate Plaintiff's subjective symptoms in light of SSR 16-3p.

### A. The ALJ failed to consider Plaintiff's obesity.

Plaintiff asserts that the ALJ erred in failing to evaluate the effects of Plaintiff's obesity when determining whether his impairments, alone or in the aggregate, met or medically equaled a listing; the Court agrees. An ALJ is required to "consider the exacerbating effects of a claimant's obesity on [his] underlying conditions," even if claimant's obesity is not itself a severe impairment. *Hernandez v. Astrue*, 277 F. App'x 617, 623–24 (7th Cir. 2008). Thus, when a claimant lists obesity as one of his impairments, the ALJ must "consider the effects of obesity together with the [claimant's] underlying impairments." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). However, when a claimant does not explicitly list obesity as one of his impairments, the ALJ must evaluate how the claimant's obesity impacts his overall condition, provided that the ALJ is put on notice that the claimant's obesity could be a relevant factor,. *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000); *see also* 20 C.F.R. § 404.1512(a) (stating an ALJ need only consider impairments about which the ALJ receives evidence).

For example, in *Clifford*, the Seventh Circuit reversed and remanded an ALJ's denial of disability benefits because the ALJ did not consider the disabling effect of the claimant's obesity on the claimant's overall condition. 227 F.3d at 873. Although the claimant in *Clifford* had not claimed obesity as an impairment in her disability application, the court found that "the evidence should have alerted the ALJ that [the claimant] had another relevant impairment that could

6

contribute to the cumulative effect of [the claimant's] other impairments." *Id.* The court reasoned that the ALJ was put on notice to consider the claimant's obesity because the record contained numerous references to the claimant's obesity, including that the claimant suffered from impairments "significantly related to obesity." *Id.*

Like in *Clifford*, the ALJ in the instant case failed to consider the disabling effect of Plaintiff's obesity on his overall condition when the evidence should have alerted the ALJ that Plaintiff's obesity was a relevant impairment. Although Plaintiff did not claim obesity as an impairment on his application, there were numerous references to Plaintiff's obesity in the record. *See e.g.*, R. at 437 (showing doctor warned Plaintiff that obesity could delay healing or present increased risk with his shoulder surgery); R. at 462 (showing medical report described Plaintiff's abdomen as "obese"). Notably, the record not only shows that Plaintiff suffered from diabetes mellitus, an impairment "significantly related to obesity," but that Plaintiff sent updates regarding his weight loss to the doctor monitoring his diabetes, after this doctor specifically instructed Plaintiff to diet and exercise. R. at 364, 489; *See e.g.*, SSR 02-1p, 2002 WL 34686281, at *3 (showing diabetes is significantly related to obesity because "[o]besity increases the risk of developing impairments such as type II (so-called adult onset) diabetes mellitus"). Therefore, because such references could have reasonably alerted the ALJ that obesity was another relevant impairment, the ALJ was required to consider the effects of Plaintiff's obesity on his overall condition; since he did not, the case requires remand.

Further, the Court recognizes that an ALJ's failure to explicitly consider the effects of a claimant's obesity may constitute harmless error in certain cases; however, the Court is not convinced that the ALJ's silence regarding Plaintiff's obesity is harmless in the present case. When a claimant does not specify how obesity impairs the claimant's ability to work, an ALJ's

failure to explicitly consider the claimant's obesity will be deemed harmless error if the ALJ *implicitly* considered the effects of the claimant's obesity. *Prochaska*, 454 F.3d at 736–37; *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). However, where it is unclear whether an ALJ implicitly considered the claimant's obesity, remand is appropriate. *See e.g., Milad v. Colvin*, No. 14 CV 4627, 2016 WL 374138, at *6 (N.D. Ill. Feb. 1, 2016).

The Court does not believe that the ALJ's omission of discussion regarding Plaintiff's obesity is harmless error because the present case lacks evidence suggesting the ALJ implicitly considered Plaintiff's obesity. *See e.g.*, *Hernandez*, 277 F. App'x at 623 (showing the court found that an ALJ implicitly considered the claimant's obesity "so long as the ALJ demonstrated that he reviewed the medical reports of the doctors familiar with the claimant's obesity"). Here, although the record contains numerous references to Plaintiff's excessive weight, it is unclear if the doctors relied upon by the ALJ were familiar with Plaintiff's obesity because Plaintiff is only described as "obese" once in the entire record. *See* R. at 462 (showing Dr. Irshad wrote, "abdoemn [sic] obese" in her notes). Hence, since the ALJ does not reference Dr. Irshad's notes anywhere in his opinion or give weight to Dr. Irshad's medical opinion, and since Dr. Irshad's notes are the only evidence in the record of a doctor's awareness of Plaintiff's obesity, the Court cannot conclude that the ALJ implicitly considered Plaintiff's obesity.

Additionally, the Court is not convinced there is harmless error in not considering Plaintiff's obesity, given obesity's interrelated effects on diabetes, which is one of Plaintiff's severe impairments. R. at 15; *see Willis v. Colvin*, No. 13 CV 8971, 2016 WL 270234, at *5 (N.D. Ill. Jan. 21, 2016) (showing the Court was not convinced there was harmless error when an obese claimant suffered from respiratory ailments and depression, because those impairments have compounding effects when paired with obesity); *see also Celaya v. Halter,* 332 F.3d 1177,

1182 (9th Cir. 2003) ("Given the potential effect of obesity on [diabetes and hypertension], the ALJ had a responsibility to consider their interactive effect."). Thus, because Plaintiff suffers from both diabetes and hypertension, which are impairments known to be interrelated with obesity, and because the record does not indicate that the ALJ properly considered the aggregate effect of all of Plaintiff's impairments, the Court believes remand is necessary to consider the cumulative effects of Plaintiff's obesity on his underlying impairments. *See* R. at 15–16.

### B. The ALJ's failure to properly weigh medical opinion evidence.

Plaintiff argues that the ALJ improperly weighed the medical opinion evidence; the Court agrees. Generally, an ALJ is required to "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1). Although, an ALJ can reject an examining physician's opinion, but "*only for reasons supported by substantial evidence* in the record." *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003) (emphasis added). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000) (internal quotations omitted)).

In the present case, the Court cannot reasonably conclude that the ALJ's decision to afford little weight the medical opinion of examining physician, Dr. Velis, is supported by substantial evidence. First, the ALJ misstates Dr. Velis's opinion and then uses his own misstatements to reject Dr. Velis's opinion. For example, the ALJ discredits Dr. Velis's finding that Plaintiff had several severe limitations including the inability to lift more than ten pounds, to stand or walk for more than fifteen minutes at a time, and to work in many adverse environments by stating that "*the only support* [Dr. Velis] provided for this opinion is noting that the claimant has peripheral neuropathy from diabetes." R. at 19. (emphasis added). However, a careful

9

reading of Dr. Velis's opinion reveals that Dr. Velis listed more than just "peripheral neuropathy from diabetes" to support his findings. On page six of his opinion, immediately after his notation indicating that Plaintiff cannot lift more than ten pounds, Dr. Velis lists that "rotator cuff injury bilateral" supports that limitation. R. at 495. On the next page, Dr. Velis notes that Plaintiff cannot stand or walk for more than fifteen minutes at a time because of his "peripheral neuropathy from diabetes." R. at 496. On the rest of the pages, Dr. Velis continues noting Plaintiff's additional limitations, but writes that these limitations are supported by findings "as noted above." R. at 497–500. The Court reasonably believes, based on a plain reading of Dr. Velis's opinion, that for the rest of these limitations, "as noted above" refers to the findings Dr. Velis previously noted in his opinion, which include both "rotator cuff injury bilateral" *and* "peripheral neuropathy from diabetes." *See* R. at 495–496. Thus, contrary to the ALJ's reasoning, Dr. Velis provided more than just "peripheral neuropathy from diabetes" as support for Plaintiff's limitations.

Second, the ALJ discredits Dr. Velis's opinion because his "own examination indicated that claimant had full muscle strength and that his finger grasp and hand grip was unimpaired bilaterally, which is not consistent [with] the claimant's reported need to use his upper extremities at most occasionally." R. at 19. Although Dr. Velis does note that Plaintiff's finger grasp and hand grip were unimpaired bilaterally, nowhere in Dr. Velis's opinion does it state that Plaintiff had "full muscle strength," and the ALJ provides no citation for this statement. *See* R. at 19, 491–500. Rather, in his musculoskeletal impressions, Dr. Velis notes that Plaintiff's shoulder abduction is limited and comes "with range of motion pain and tenderness," which is "marked" in the left shoulder. R. at 493. Thus, contrary to the ALJ's assertion, the Court cannot conclude that Dr. Velis's observations regarding Plaintiff's shoulder limitations are inconsistent with

10

Plaintiff's alleged limitations of his "upper extremities." *See e.g.*, R. at 39 (showing Plaintiff alleges weakness in his shoulder).

Finally, the ALJ doubts Dr. Velis's opinion because the "claimant's diabetes mellitus and neuropathy also *seems unlikely* to have rendered the claimant unable to work around humidity and wetness, dusts, odors, fumes, an [sic] pulmonary irritants, or extreme temperatures, by that is the only explanation he gave." R. at 19 (emphasis added). However, this misstates Dr. Velis's opinion for a third time. As previously discussed, "peripheral neuropathy from diabetes" is not the only explanation Dr. Velis gave for Plaintiff's inability to work in adverse environments. This statement is also based on the ALJ's own speculation of what "seems unlikely," not on substantial evidence. *See* R. at 499; *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1990) (stating that "[s]peculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence"). Thus, the Court cannot reasonably find that the ALJ's rejection of Dr. Velis's opinion was supported by substantial evidence.

The Court also cannot reasonably conclude that the ALJ's decision to afford great weight to Dr. McKenna's opinion is supported by substantial evidence. It is unclear if the ALJ considered all the evidence when determining that Dr. McKenna's opinion was entitled to more weight than Dr. Velis's. *See Clifford*, 227 F.3d at 871 (stating ALJ must consider "*all* relevant evidence"). Dr. McKenna expressed difficulty in providing an accurate assessment of Plaintiff's condition because Plaintiff's last consultative exam was fourteen months old. However, the ALJ ignores any discussion regarding how the ALJ determined that Dr. Velis's opinion was entitled to less weight than Dr. McKenna's, when Dr. Velis's opinion is the most recent opinion of record and was requested specifically to update the record. *See* R. at 59–60 (showing Dr. McKenna recommended that another consultative examination occur as it "could be helpful . . .

11

to update the situation"); R. at 61 (showing that at the hearing, the ALJ found it necessary to get updated records and to request a new consultative examination in order to "hopefully . . . put it all together"). Hence, the Court cannot say with confidence that the ALJ considered all the relevant evidence when deciding to afford great weight to Dr. McKenna's opinion. Therefore, in light of these errors, remand is necessary so that the ALJ may properly reevaluate the opinions of Dr. Velis and Dr. McKenna.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment to affirm the Commissioner's decision [16] is denied; the Court grants Plaintiff's motion [11] for the reasons outlined above, and remands for further proceedings consistent with this opinion.


**ENTER:**

**DATE: 7/14/2016**

_____
**U.S. Magistrate Judge, Susan E. Cox**